## Nimrod Hughes *v.* The State.

**Criminal Law — Sufficiency of Evidence to Sustain a Verdict.**

    It is the province of the jury to determine the credit due to a witness, and its verdict will not be set aside if the evidence fully sustains it.[1]

**Same — New Trial — Surprise.**

    It is not error to overrule a motion for a new trial on the ground of surprise on the showing that a witness for the opposite side has testified to important facts not testified to on the committing trial when the evidence introduced in support of the motion fails to show such surprise.[2]

---

[1]

Where the verdict of a jury is not supported by the evidence in the case it should be set aside by the court. Barnett *v.* Jayne, 1 Miss. Dec. 65, and cases cited in note 2.

The verdict of a jury will be set aside on consideration of the facts alone, if they fail to sustain it. Allen *v.* State, 1 Miss. Dec. 126, and cases cited in notes.

A decree of the lower court will not be reversed in the Supreme Court unless the record affirmatively shows that injustice has been done, the presumption being that the court had sufficient reasons for its action. Smith *v.* Harris, 1 Miss. Dec. 210, and cases cited in note 1. See cases cited in 1 Miss. Dec. 407, note 1.

A verdict will not be allowed to stand where there is palpable failure of proof to sustain it. In such cases a new trial will be granted. Campbell *v.* State, 1 Miss. Dec. 413, and cases cited in note.

Manifest error in a verdict is sufficient ground for the reversal of the judgment thereon. Walker *v.* State, 1 Miss. Dec. 431, and cases cited in notes.

Nimrod Hughes was convicted, in the Circuit Court of Noxubee county, of grand larceny and sentenced to the penitentiary for two years, and appeals.

On the trial Hiram Webb testified that he had a hog stolen from him in the latter part of December, 1880, and he lived about a half-mile from Nimrod Hughes, and the hog stayed around where Nimrod lived; that it was a pet pig and easily caught and was worth about $2. Edmond Webb testified that Hiram Webb

---

If the verdict of a jury is contrary to the evidence and the instructions of the court, it should be set aside and a new trial granted by the court. Turley *v.* Ingram, 1 Miss. Dec. 542, and cases cited in notes.

The judgment of the Circuit Court will be reversed on the ground that the verdict is wrong, when no error of law is complained of, if the evidence is insufficient to support the verdict of the jury. Porter *v.* State, 1 Miss. Dec. 555, and cases cited in notes.

2

Where a party or his counsel is taken by surprise in respect to any material circumstance which could not have been reasonably anticipated, and where want of skill, care or attention cannot be justly imputed, and injustice has been done, a new trial will be granted. Dorr *v.* Watson, 6 Cush. 383.

The defendant held the plaintiff's attorney's receipt for a credit. On the trial, the attorney, as a witness for the plaintiff, swore that the credit was conditional, and that the condition upon which its validity depended had not been complied with, and upon this the jury disallowed the credit. The defendant's affidavit for a new trial stated that he was surprised at the attorney's testimony, and went on to detail circumstances which tended to show the attorney's mistake; and the affidavit stated also, that on another trial the defendant could prove the mistake; held, that although the defendant knew before the trial that the credit would be resisted, yet he had a right to claim that he was surprised at the testimony of the attorney, to the effect that his unconditional receipt was in fact conditional, and that a new trial should be granted. Arthur *v.* Mitchell, 10 S. & M. 326.

To entitle a party to a new trial on the ground of surprise, there must be merit in the applicant's case, and the surprise must be such as care and prudence could not provide against. The slightest negligence will defeat the application, or occasion the imposition of the most rigorous terms, as a condition of granting it. Thompson *v.* Williams, 7 S. & M. 270; Green *v.* Robinson, 3 H. 105; Rupert *v.* Grant, 6 S. & M. 433; Smith *v.* Natchez Steamboat Co., 1 H. 479.

A motion for a new trial will not be granted merely on the showing that a witness for the opposite side has testified to important facts not previously disclosed and not alluded to in his testimony on a former trial, he not being questioned as to the discrepancy, and there being no effort to impeach or contradict him by proof that he had not delivered the same testimony as on the former trial. Underwood *v.* Ainsworth, 72 Miss. 328; 18 So. 379.

lost a hog during Christmas, 1880, and it stayed around where Nimrod Hughes lived; that he went to Nimrod's house the next morning looking for the hog and Nimrod said he did not know anything about it.

Annie Nicholson testified that she was living at Nimrod's house, and on Friday of Christmas week Hiram Webb's hog was there; that Nimrod threw it some corn about dark and asked witness to knock it in the head and they would eat it; that it was in the way; which witness declined to do; that she went to a neighbor's house and stayed all night and ate breakfast the next morning with Nimrod's family and they had fresh meat for breakfast; that the hog stayed around there all the time, and was not seen any more; that when they were nearly through eating Edmond Webb came there quarreling about the hog being gone and Nimrod jumped up from the table and told his sister to throw the bones in the fire, which he did; that there was a small piece of the meat left, which Nimrod's wife covered up. The defendant introduced Asa Hodges, who testified that he issued supplies to Nimrod Hughes Christmas week and let him have some fresh bulk pork. This was all the evidence. The jury brought in a verdict of guilty and the defendant made a motion for a new trial, and in support of it introduced the affidavit of Nimrod Hughes to the effect that he was surprised by the testimony of Annie Nicholson in the statement of said witness that the defendant directed his sister to throw the bones left on the table into the fire to prevent them from being seen by Edmond Webb; the affidavit further states that defendant could contradict that statement by the testimony of his sister and that he did not know the materiality of her testimony.

He also introduced the affidavit of two others, who stated that they were present at the preliminary trial of the defendant and heard the testimony of Annie Nicholson, and she did not state that there was any attempt to conceal the remains of the meat when Edmond Webb appeared at the house and did not state that the bones were thrown in the fire by Nimrod's sister. These affidavits further set out that Nimrod did not have fresh meat that morning for breakfast, but had fresh bulk pork. Nimrod's sister made affidavit that she did not take breakfast with Nimrod on the morning stated, but came in a little behind Edmond Webb, and that the statements of Annie Nicholson that she was there

and threw the bones in the fire at the direction of defendant were not true.

The court overruled the motion for a new trial and defendant appeals.

APPEAL from Circuit Court, Noxubee county, J. M. ARNOLD, Judge.

Affirmed, November 21, 1861.

*Attorneys for appellant, Jarnagin, Bogle & Jarnagin, and L. Brame.*

*Attorney for State is not named in the record.*

Brief of Jarnagin, Bogle & Jarnagin, and L. Brame:

We submit that the testimony was not sufficient to sustain the conviction. The fact that the pig was missing, and that Hughes had proposed to kill it, does not establish that he did take it. It was for the State to show beyond all reasonable doubt that he was guilty of the crime.

Annie Nicholson, who testified for the State, was evidently a swift witness. The case hangs upon her testimony. She says she ate part of the fresh meat at breakfast time—could not tell what portion of the hog it was. This is remarkable, if she was eating part of the pig that was lost. As well say she could not tell what portion of a chicken she was eating.

She states positively that fresh meat was not issued to Hughes during that week. But Mr. Hodges, the superintendent on the place, testifies that he did issue fresh pork to Hughes during Christmas week while Annie Nicholson was there.

Brief for the State is not found in the record.

OPINION.—CAMPBELL, J.:

If the jury believed the testimony of Annie Nicholson, it could not have done otherwise than to find a verdict of guilty. It was the peculiar province of the jury to determine the credit due to the witness, and it is not for this court to review its conclusion on that matter. The evidence fully sustains the verdict.

The effort to show a case of surprise against the consequences of which the court could relieve the prisoner, according to the settled rules on that subject, was a failure, and the court did right to refuse a new trial on that ground. We find no error in the record, after diligent search for it, and the judgment is therefore

*Affirmed.*